UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTEBAN CARLOS RIVAS GARCIA,<br><br>Petitioner,<br>v.<br><br>JULIO HERNANDEZ et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02163-LK<br><br>ORDER GRANTING AMENDED PETITION FOR HABEAS CORPUS |

This matter comes before the Court on Petitioner Esteban Carlos Rivas Garcia's amended petition for a writ of habeas corpus. Dkt. No. 20. For the reasons set forth below, the Court grants the petition.[1]

## I. BACKGROUND

Petitioner "is a native and citizen of Mexico who first entered the United States on an unknown date at an unknown location without being admitted or paroled." Dkt. No. 9 at 2. In 2007, United States Border Patrol "encountered and arrested [him] for unlawful entry into the United

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

States" and "processed [him] as a Voluntary Return to Mexico." *Id.* He subsequently "entered the United States on an unknown date at an unknown location without being admitted or paroled." *Id.*

On May 23, 2026, the Seattle Fugitive Operations Team of U.S. Immigration and Customs Enforcement ("ICE") encountered Petitioner "during a targeted enforcement operation in Renton," Washington, and determined that he was unlawfully present in the United States. *Id.* A supervisor from ICE Enforcement and Removal Operations issued a Warrant of Arrest, and Petitioner "was taken into custody and issued a Notice to Appear [('NTA')], charging him as removable from the United States under Section 212(a)(6)(A)(i) of the Immigration and National[ity] Act ('INA') and scheduling him to appear before an immigration judge in removal proceedings." *Id.*; *see also* Dkt. No. 11-1 at 4; Dkt. No. 11-2 (NTA). Petitioner was transported to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 9 at 2.

Petitioner had a bond hearing on June 9, 2026 in which he was represented by counsel. *Id.* An immigration judge ("IJ") denied bond for lack of jurisdiction, and in the alternative, based on a finding that Petitioner was a flight risk. *Id.* at 2–3; *see also* Dkt. No. 11-3 (bond decision). Respondents have filed an audio recording of the bond hearing. Dkt. No. 25. Petitioner did not appeal his bond decision, but he did appeal his voluntary departure order to the Board of Immigration Appeals ("BIA"), where it remains pending. Dkt. No. 23 at 2.

Petitioner filed his pro se petition for habeas corpus on June 22, 2026. Dkt. No. 1. The same day, he filed two motions for emergency relief requesting release and an order preventing his transfer from this district. Dkt. Nos. 2, 3. The Court denied those motions. Dkt. No. 6. Respondents[2] filed a return, Dkt. No. 8, and Petitioner filed a traverse, Dkt. No. 12. On August 31,

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir.

2026, after the briefing was complete, Petitioner filed a Notice of Completed Briefing alongside new documents. Dkt. Nos. 13, 14. The Court struck those new filings as procedurally improper fugitive documents, but granted him leave to file an amended petition. Dkt. No. 15 at 1–2. On October 5, 2026, Petitioner, now represented by counsel, filed an amended petition. Dkt. No. 20. Respondents filed a return, Dkt. No. 22, and Petitioner filed a traverse, Dkt. No. 27.

## II. DISCUSSION

Petitioner asserts that he is detained under 8 U.S.C. § 1226(a) and is a member of the *Rodriguez Vazquez* bond denial class, Dkt. No. 20 at 12–13, and Respondents do not oppose those assertions, Dkt. No. 22 at 4. For the reasons laid out in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1322–36 (W.D. Wash. 2025), *aff'd*, 183 F.4th 1160 (9th Cir. 2026), the Court agrees with Petitioner that the statute governing his detention is Section 1226(a).

Petitioner contends that the IJ abused her discretion and violated 8 U.S.C. § 1226(a) and its implementing regulations by finding that he is a flight risk based solely on his decades-old unlawful reentry into the country, which did not "overcome the significant positive equities and evidence" in his favor. Dkt. No. 20 at 24–25. He also argues that the bond decision violated his due process rights, *id.* at 25–26, and violated the declaratory judgment in *Rodriguez Vazquez*, which "makes clear that Respondents violate the INA by applying § 1225(b)(2) to subject class members to mandatory detention," *id.* at 26. He seeks immediate release, the return of his personal property, and an award of attorney's fees. *Id.* at 27. Respondents argue that Petitioner is lawfully detained under Section 1226(a), he failed to exhaust his administrative remedies, and his bond hearing comported with due process. Dkt. No. 22 at 4–10.

---

2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion is Not Required**

Petitioner argues that the Court should not require exhaustion because no agency expertise is required, a ruling from this Court could provide guidance about "when someone constitutes a

flight risk," and agency review would be lengthy while Petitioner and his family suffer irreparable injury. Dkt. No. 20 at 18–24. Respondents contend that Petitioner "cannot seek relief from this Court because he failed to appeal his bond decision before BIA." Dkt. No. 22 at 5. They argue that the Court should require prudential exhaustion, and because Petitioner failed to appeal his bond decision, "any argument regarding irreparable harm upon waiting for a decision from the BIA lacks merit." *Id.* at 6.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

In light of the unique facts of this case, the Court exercises its discretion to not require exhaustion. Specifically, the IJ's decision—and the utter lack of rationale justifying that decision, as discussed below—"is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26

CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). And if most IJs begin issuing decisions with similarly deficient reasoning, risk of encouraging deliberate bypass of the administrative scheme is the least of this Court's concerns. *Id.*

Considering the *Puga* factors and the particular circumstances of this case, prudential exhaustion is not required here. The Court now turns to whether the IJ's decision was an abuse of discretion.

**C. The IJ Abused Her Discretion**

Respondents assert that Petitioner's bond hearing comported with due process because the hearing was recorded, the government was not required to show that Petitioner was a flight risk by clear and convincing evidence, and the procedures used gave Petitioner "adequate safeguards to protect against arbitrary deprivation of liberty" under the *Mathews* factors. Dkt. No. 22 at 7–9 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Petitioner argues that "Respondents' return is unresponsive to [his] claims that the IJ abused her discretion in finding him to be a flight risk." Dkt. No. 27 at 5. He argues that Respondents' *Mathews* analysis is inapplicable because "*Mathews* governs what procedures are due before a deprivation, not whether the evidence at a hearing was legally sufficient to support a deprivation." *Id.* He further contends that "Respondents do not offer a meaningful defense of the flight-risk finding" and they "never respond to the specific legal errors identified in the habeas petition, explain how the uncontested evidence here demonstrates flight risk as a matter of law, or respond to highly similar decisions that this Court has recently issued overturning flight risk findings." *Id.* at 6 (internal citation omitted). Petitioner asserts that "the single factor on which the IJ relied—one voluntary return decades ago—cannot support a flight risk finding as a matter of law." *Id.*

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The allegations in Petitioner's amended habeas petition—that the IJ abused her discretion when she determined that Petitioner was a flight risk—presents a mixed question of fact and law that the Court has jurisdiction to review. *Id.*

IJ Tammy Fitting memorialized her decision in a check box form, checking the box that detention was mandatory under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and in alternative, that Petitioner was a flight risk. Dkt. No. 11-3 at 2–3.[3] At the conclusion of the hearing, she explained that she was "concerned" that Petitioner returned to the United States without lawful status in 2007 despite being granted voluntary departure, so she lacked confidence that he would follow the immigration court's orders now. Dkt. No. 24-1 at 9:03–46 (audio recording of the June 9, 2026 bond hearing). She thus denied him bond.

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of evidence at her bond hearing, *see Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *8–9 (W.D. Wash. Feb. 23, 2026), the Court finds that the IJ abused her discretion in this case. *See Martinez*, 124 F.4th at 779. In advance of his June 9, 2026 bond hearing, Petitioner submitted "voluminous evidence of his ties to the United States, including proof of a U.S. citizen sponsor, seventeen years of tax filings, his children's U.S. birth certificates, a medical

---

[3] Respondents do not defend the IJ's finding of mandatory detention under *Matter of Hurtado*. *See generally* Dkt. No. 22.

letter, titles to his cars, evidence of no criminal history, and letters of support." Dkt. No. 20 at 20; *see also* Dkt. No. 20-1.[4] The record before the Court is devoid of any indication that the IJ considered this evidence or weighed the relevant *Guerra* factors in making the flight risk determination. Instead, IJ Fitting based her flight risk finding entirely on Petitioner's 2007 unlawful reentry following his voluntary departure, Dkt. No. 24-1 at 9:03–46, but she failed to explain why that decades-old conduct "suggests [that he] would be motivated to flee and otherwise not appear at future immigration proceedings." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026). That is, IJ Fitting provided "no explanation why an unauthorized reentry into the United States [19] years ago would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee. Concluding that an unlawful entry from [19] years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale." *Id.*; *see also* *Zavala Sandoval v. Hernandez*, No. 2:26-cv-01198-JNW, 2026 WL 1661379, at *4 (W.D. Wash. June 9, 2026) ("The IJ does not explain how Zavala Sandoval's prior voluntary return to Mexico in 2000 and 2006 makes him a flight risk decades later. Voluntary return orders dating back to 2000 and 2006 do not bear on Zavala Sandoval's flight risk status today."). IJ Fitting failed to address any other relevant *Guerra* factors, including Petitioner's length of residence in the United States, his significant family ties here, his employment history, and his record of appearance in court.

In sum, IJ Fitting failed to provide rationale for her finding of flight risk and failed to engage whatsoever with the factors weighing against such findings. Accordingly, she did not "correctly appl[y] the [legal] standard to a given set of facts[.]" *Martinez*, 124 F.4th at 783 (citation

---

[4] Petitioner was arrested and charged with theft in 2013 "because he was travelling with another individual who stole an item from a convenience store, but no complaint was ever filed against [Petitioner], and the case was dismissed and closed." *Id.* at 9–10.

modified). By failing to accord Petitioner the process due to him, IJ Fitting abused her discretion and violated his Fifth Amendment rights. *See Segura Serrano v. Scott*, No. 2:26-cv-01268-LK, 2026 WL 1674357, at *9 (W.D. Wash. May 26, 2026); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (bond denial was "constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk").

**D. Release is the Appropriate Remedy**

Having found a due process violation, the Court considers the appropriate remedy. Petitioner requests immediate release, Dkt. No. 20 at 27, while Respondents argue that the petition should be denied outright, Dkt. No. 22 at 10.

Because Petitioner's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for his continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 830 F. Supp. 3d at 1082 (ordering petitioner's immediate release after finding no basis for continued detention).

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the amended petition for habeas corpus, Dkt. No. 20, and orders as follows:

1. Respondents shall release Petitioner from custody and return his property to him within 24 hours under terms consistent with 1226(a);

2. The parties shall file a Joint Status Report by October 30, 2026, confirming that Petitioner has been released;

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 29th day of October, 2026.

Lauren King
United States District Judge